LESSEE OF ALFRED CAULK et al. *vs.* REBECCA CAULK.

*Case Stated—Devise— Will—Issue— Children— Words of Limita-
tion—Of Purchase—Real Estate—Personal Property—
Survivors—Estate Tail—Limitation Over—Intention
of Testator—Rule of Construction—Case of
Jamison vs. McWhorter, 7 Houst., 242,
incorrectly Reported.*

1. A. devised real estate to each of his three sons, their heirs and assigns for-
ever; and provided by a subsequent item of his will that, if either of his "sons should
die leaving no child or children, then and in that case the survivors or survivor should
inherit the deceased one's portion and portions, to them or either of them, their heirs
and assigns forever." *Held,* that each of the sons took an estate tail in the real estate
so devised.

2. The words "child or children" are ordinarily construed to be words of
purchase and not of limitation; but there are many cases in which such words have
been held to be words of limitation and synonymous with issue. They are often given
such meaning in order to carry out the manifest intention of the testator as gathered
from the entire will. Such words, unaided by the context and unaffected by other
language in the will showing an intention to use them in a more comprehensive sense,
would ordinarily restrict the failure of issue to the death of the first taker. But the
courts will seize upon any other words employed by the testator which show that his
desire and intention was that the failure of issue was to be a general and indefinite
one; and that not only children, but grandchildren, and even remoter issue, should
be the beneficiaries of his bounty.

3. The case of *Jamison vs. McWhorter, 7 Houst., 242,* is incorrectly reported.
The opinion delivered by Judge Houston, and reported as the dissenting opinion, was
in fact the opinion of the majority of the Court. The decree is in conformity with that
opinion.

4. The word "survivor or survivors" in the limitation over will not restrict
the word "children" to a failure of issue at the death, especially when words of limi-
tation are added to these words.

5. In construing the word "children" in wills, courts have recognized a dis-
tinction between bequests of personal property and devises of real estate. In the
former it has been often treated as a word of purchase, when in a devise of real estate
it would have been held to be a word of limitation.

(*June 6, 1902.*)

LORE, C. J., and PENNEWILL and BOYCE, J. J., sitting.

*Martin B. Burris* for plaintiffs.

*Harry Emmons* and *Edward Glenn Cook* for defendant.

Superior Court, New Castle County, February Term, 1902.

CASE STATED. EJECTMENT.

PENNEWILL, J. :—On the 29th day of December, 1862, Isaac Caulk, of New Castle County, made his last will and testament whereby he devised to his son, James Wesley Caulk, certain real estate in said county, to him the said James Wesley, his heirs and assigns forever.

He devised certain other real estate in said county to his son, Leonard Caulk, to him, his heirs and assigns forever.

And certain other real estate in said county he devised to his son, Alfred Caulk, to him, his heirs and assigns forever.

By a subsequent item of his will the testator provided as follows: " Item : and further, my will and desire is that if either of my sons, James Wesley, Leonard and Alfred, should die leaving no child or children, then and in that case the survivors or survivor shall inherit the deceased one's portion and portions, to them or either of them, their heirs and assigns forever."

In the year 1898 the three sons, supposing the estates so devised to them to be estates tail, executed and delivered deeds of conveyance with intent to bar the same.

In 1900 the said Leonard Caulk died seized of the lands so devised, leaving no child or children, but a widow, Rebecca Caulk, party hereto, he the said Leonard, having made his last will and testament, whereby he devised his real estate to his wife Rebecca, for life, and after her death to an adopted son, a daughter-in-law, and his nearest of kin, the Caulk heirs.

In 1902 James Wesley Caulk died, leaving a widow and six children, parties hereto.

At the time of the making of said will by Isaac Caulk all of his three sons were unmarried and without issue.

The question presented for the determination of this Court under the case stated and filed in the cause, is what estate did each of the three sons of Isaac Caulk take in the lands so devised to them in and by the will of the said Isaac Caulk.

It is conceded by counsel on both sides, as appears by the case stated, that each of said sons took either an estate tail, or a defeasible fee simple, with an executory devise over to the survivors or survivor upon the dying leaving no child or children living at the time of death. And it is agreed that judgment shall be entered accordingly.

The words " child or children " are ordinarily construed to be words of purchase and not words of limitation; but there are many cases involving the construction of wills in which such words have been held to be words of limitation and synonymous with issue. They have frequently been given such broader and more general meaning in order to carry out the manifest intention of the testator as gathered from the entire will.

It is true that such words, unaided by the context and unaffected by any other language in the will showing an intention to use them in a more comprehensive sense, would ordinarily restrict the failure of issue to the death of the first taker. But Courts have not been slow to seize upon any other words employed by the testator which show that his desire and intention was that the failure of issue was to be a general and indefinite one, and that not only children, but grandchildren, and even remoter issue, should be the beneficiaries of his bounty.

*Jamison vs. McWhorter, 7 Houst., 242; Jarman on Wills, 189, 190, 191, 192, 193, 194 and 195; Doe vs. Weber I. B. and Ald., 713; Doe vs. Simpson, 3 M. and G. 929; Hedges vs. Middleton Doug., 431; Smith vs. Hilliard, 3 Strobh Eq. (S. Car), 211; Park-*

*man vs. Bowdoin I. Sunn. (U. S.) 359 ; Nightingale vs. Burrell, 15 Pick 104 ; Dunlap vs. Shrieve, 2 Duv. (Ky.), 334 ; Merryman vs. Merryman, 5 Munf. (Va.), 440 ; Purefoy vs. Rodgers, 2 Saunders, Part 2, p. 388 (Note 1); Wheatland vs. Dodge, 10 Mir., 502 ; Kent's Com. 278, Note 3 ; Greenleaf's Cruise on Real Prop., 303 and Note 1, pages 304 and 305 ; Raggett vs. Beaty, 5 Bing., 243 ; Bacon vs. Cosby, 4 De G. and S., 261 ; Amer. and Eng. Ency. of Law (2nd Ed.), 1090.*

In the case of *Doe vs. Weber* the testator gave certain real estate to his niece, Mary Hiles, her heirs, executors, administrators and assigns forever; "and my will is, that in case my niece, Mary Hiles, shall happen to die and leave no child or children, then * * * unto my niece, Jane Barns." It was held that the words "child or children" were synonymous with issue. Lord Ellenborough, C. J., said: "In this case it has been contended that the words 'child or children' mean issue, and that the first devise is therefore converted into an estate tail by the limitation over on Mary Hiles's dying and leaving no child or children, in which case the limitation is a remainder and barred by the recovery ; or, if the first devise be considered to be in fee, that the limitation over is too remote, as being an executory devise after an indefinite failure of issue. It is true that the words 'child or children' may mean issue, and where the intent requires it the word 'children' has not been confined to the immediate descendants, though that is its ordinary and proper sense, but has been extended to all the descendants—as in *Wilds case, 6 Coke 17*. And in the present case the words 'child or children' must be construed to mean issue, because it is the manifest intention of the testatrix that Jane Barnes should not take by the devise over in exclusion of any of the issues, however remote, of Mary Hiles."

In this case there were no particular words which clearly indicated any intention on the part of the testator to use the words "child or children" in the sense of issue, but the learned Judge thought from the entire will such was the manifest intention.

It may be said, we think, generally and almost without exception that where the devise is to the first taker in fee simple with a limitation over if he leave no child or children (if there be no children living at the date of the will, and the subject matter of the will is real estate); the first taker has been held to take an estate tail, and the words "child or children" to import a general failure of issue. Many of the cases above cited are to that effect.

In the case of *Doe vs. Simpson*, Lord Denman, C. J., although he considered that the testator had practically construed the words "child or children" by a subsequent provision of his will, nevertheless cited with approval the observations of Lord Ellenborough in the case of Doe *vs.* Weber. Mr. Jarman in his work on Wills, at pages 405 and 406, in commenting on the case of *Raggett vs. Beaty, 5 Bing., 243,* says: "This is the most signal instance in which an estate tail has been created by a devise over in case of the prior devisee leaving no child, though the tenor of the authorities discussed in the present chapter and some others, especially Doe *vs.* Weber (in which Lord Ellenborough had every little difficulty of construing the word "children" in such a position as synonymous with issue), had certainly paved the way to such a result. An example of this species of construction has since occurred (though with an assisting context) in *Doe vs. Simpson*—(The Court thought, however, that even without this clause there would have been strong grounds for coming to the same conclusion.) And in *Bacon vs. Crosby,* where a testator left 'his entire fortune equally divided between his two daughters, and directed that the portion of the younger one should devolve, in case of her dying without children, to his eldest daughter and her children,' a similar construction prevailed, though there was no explanatory context, and the consequence was that the gift over was void as to the personal estate. The younger daughter never had a child, but the elder had two children living at the date of the will, and in giving judgment, Sir J. K. Bruce, V. C., said that, according to the whole course of the decisions and the plainest rules of construction, the

youngest daughter would have been held to take an estate tail in realty, and an absolute interest in the personalty, but for the words " and her children" occurring at the end of the will and applied to the elder daughter, coupled with the fact that the older daughter had had children at the date of the will. This, however, was, he thought, much too slight and conjectural a ground for departing from a settled rule of construction."

In the case of *Parkman vs. Bowdoin* there was a devise of a life estate, followed by a devise in remainder to James, and to his lawfully begotten children in fee simple forever. But in case he should die without children lawfully begotten, then to George and his lawfully begotten children in fee simple forever. And in case of the death of both, without lawfully begotten children, then to a younger son, and his lawfully begotten children in fee simple forever; and in case of the failure of all sons, then to the daughters successively, etc.

Justice Story in delivering the opinion of the Court in this case, after citing the Wild case and others of a like character, said, " But there is no necessity, in the present case, of relying upon the doctrine in the foregoing cases, because here *there is a devise over*, (which did not exist in any of them) which has always been held to have a most material bearing upon the construction of the antecedent clause in making the words thereof words of limitation, and not of purchase. Suppose James should have children and they should all die in his lifetime, leaving issue; the estate would then, if construed to depend upon the contingency of leaving children at his death, pass over to George, thus entirely defeating the prior estate to the children of James, although they left issue. Yet no one can reasonably doubt that the testatrix intended the devise over to take effect only upon an *extinction of the issue of James*; for she has added the words " in fee simple" after children. It is plain, then, that upon authority there is no difficulty in the present case in construing the word ' children ' to be a word of limitation, and not of purchase, if the sense requires it. And in reason it must

be so also; for the intention of the party, when discovered, must in a will control any technical sense of particular words; since the intention, if legal, is universally admitted to govern. The strong ground upon which the word 'children' has been construed to be a word of limitation, when there is a devise over on failure of children, is, that otherwise, *if there should be children born, who should die during the lifetime of the parent, leaving issue, the latter would not take.* This consideration has always been held decisive; and it strictly applies to the present case—the superadded words 'in fee simple,' in the original devise, so far from impugning, absolutely require this construction. They demonstrate that the devise over is not to take effect while there are any sons of James in *esse*. ' In fee simple' means the same as to their heirs and assigns; and the devise over being to a collateral heir, these words are necessarily cut down to the heirs of the body. For this construction several reasons may be given. *First,* because the children were not in *esse* at the time of making the will. *Secondly,* because otherwise if children were born, and died in the lifetime of James, leaving issue, they would be excluded; whereas the words 'in fee simple' show that an interest was intended to the issue."

The case of *Jamison vs. McWhorter, 7 Houst., 242,* is manifestly incorrectly reported. Upon examination it is found that the decree of the Court is in conformity with the conclusion reached by Justice Houston in what is reported as the dissenting opinion, and not with what appears to be the opinion of the Court as delivered by Chief Justice Comegys. So that we may consider the opinion of Houston, J., as the opinion of the Court in the case, and as the law of this State. *

---

* The above conclusion is confirmed by the statements made by John H. Rodney, Esq., and A. B. Cooper, Esq., who were counsel in the case of *Jamison vs. McWhorter;* and also by the following order of the Court, made in said case :

COURT OF ERRORS AND APPEALS.

*Clarence Jamison vs. Leontine McWhorter*
No. 201, May Term, 1884.    App. Docket 1884, page 200.
"And now to wit, this third day of June, A. D. 1885, the question of law

OPINION.

In the Jamison case the devise may be stated, for the purposes of the present case, to have been to the testator's son, Clarence, for life, "and in case of his death, leaving a child or children or the issue of such, their heirs or assigns. In case of the death of any of my said sons, Edgar, Clarence and Oliver, without leaving any child or children, or the issue of such, the share of the one so dying shall go to the survivors or survivor, and the issue of such as may be deceased, subject to the same conditions and limitations as their own shares respectively hereinbefore designated."

Judge Houston, in the course of his carefully prepared opinion, says: "And there is no doubt that such words (children) so employed in devises have been so construed (as words of limitation) in many cases more than he (counsel) has cited, although the general rule of testamentary construction is admitted by him to be the contrary, that is to say, that ordinarily the word 'children' in a will is used as word of purchase and not of limitation. But with regard to the class of cases which constitute an exception to that general rule, and to which I have just alluded, Mr. Jarman remarks that it should be observed, however, that in a considerable class of cases the word child or children has received an interpretation extending it beyond its precise and more obvious meaning, as denoting immediate offspring, and been considered to have been employed as *nomen collectivum*, or as synonymous with issue or descendants; in which general sense it has often the effect, when applied to *real estate*, of creating an estate tail. Where this construction has prevailed, however, it has generally been aided by the context. There it was synonymous with issue in all events.—*2 Jarman on Wills, 73*. And where the intention of the testator

reserved and directed to be heard in this Court, before all the Judges, having been argued, and the same having been held under advisement, and been considered, it is ordered that under the provisions of the will of Thomas Jamison, Clarence Jamison, as devisee therein, took an estate tail in the premises devised in trust for him.

"And it is further ordered that this decision, and the proceedings in this Court in this cause be certified to the Superior Court of New Castle County, and that the papers transmitted therefrom to this Court be remanded thereto."

clearly appeared to have used the term as equivalent to the word issue or descendants, *and the devisee for life had no child or children when the will was made,* or at the time of the death of the testator, and it therefore could not apply as a *descriptio personarum,* such a construction was given to it, as a word of limitation, and not of purchase." (authorities cited.)  " I consider that this construction of the words ' dying without leaving child or children or the issue of such ' as a word of limitation, and clearly importing an intention on the part of the testator to use them as synonymous with the words issue or descendants, is also aided by the context of the devise," * * * " and particularly *by the terms employed by the testator in his final disposition and limitation over of the whole subject matter of the devise in the last clause of the item."*

It is true that in this case there was added to the words " child or children" the words " or the issue of such "; but it will be observed that the first devise was for life, and not in fee simple, as in the case before us.   And yet, although but a life estate in the first instance, the Court held the word " children" to mean " issue," in order that the intention of the testator might not be defeated, and such construction was placed upon the word apparently without invoking or applying the doctrine of the Wild case, which in fact could not apply, because the first estate was a life estate.   The controlling circumstances seem to have been that the devise applied to real estate, that the devisee for life had no child or children when the will was made, and the language employed by the testator in the final disposition and limitation over of the estate.   The Court felt warranted in concluding that from the entire will, and the conditions existing at the date thereof, that the words " child or children" imported a general failure of issue, and that the son took an estate tail in the lands devised to him.   Courts have been much more disposed to construe the word " children " to be a word of limitation when it follows a devise of the fee, than when it is preceded by a life estate merely in the first taker.   Indeed, as we have before intimated, it will be difficult to find a case

where such word has been held to be a word of purchase if the disposition was first of the fee, if there were no children living at the time of the making of the will, and if there was a limitation over of the character of that found in the case we are to determine. It is often otherwise when the first devise is of a life estate; but even then it may appear from the context that the testator intended to use the word in the sense of issue.

In the case of *Nightingale vs. Burrell* the testator devised certain of his real estate to one daughter and her children, and certain other real estate to another daughter and her children ; and provided that if either of his said daughters should die and leave no children, his surviving daughters and their children should enjoy their deceased sister's part. It appeared that one of the daughters had no children at the date of the will, and of course the devise to her was an estate tail under the principle of the *Wild case, 6 Coke Rep., 16,* which is that a devise to one and his children in fee, he having no children at the time, is equivalent to a devise to him and his issue, and creates an estate tail. But Chief Justice Shaw, in delivering the opinion of the Court, said : " If the other daughter *had a child at the time,* we are of the opinion that taking the whole together, the word ' children ' must be deemed to be a word of limitation and not of purchase.—The subsequent provision, that if she die and leave no children, shows a manifest intent that the children should take after the mother, which they could only do as tenants in tail—and if it be argued that the subsequent words enlarge this (the first estate) to an estate tail by implication, it is answered that that might well be if the estate were in the first clause given to the *mother alone.*" In the case now before us it will be observed the estate is given *in the first place to the son, and is given in fee simple.*

It seems, therefore, clear not only from reason, but also from the weight of authority, that the Court will construe the words " child or children " to mean issue when the intention of the testator, as gathered from the entire will, seems to require it. Jarman, in

commenting on the leading case of *Doe vs. Weber,* above cited, at page 516, says: " Lord Ellenborough disclaimed any stress on the word ' children' as distinguished from issue, as, where the intent required it, it had been held to include all descendants, mediate and immediate; and the present case, he observed, called for such a construction; otherwise, in the event of H. dying without leaving any child surviving her, but leaving grandchildren, B., the devisee over, would take in exclusion of such grandchildren, which would be contrary to the manifest intention of the testatrix."

The important thing in the construction of devises is to discover and carry into effect the intention of the testator, if it can be done by giving due weight and consideration to the whole instrument.

In any case where the word " children " shall be held to be synonymous with issue, it may be assumed that the words import an indefinite failure of issue. It is unquestionably the law and has been so declared by our own courts, that the words " dying without leaving issue," unless explained and restricted by the context, mean a general and indefinite failure of issue, and their effect is to confer a fee tail. This is a proposition that is so elementary as to need no citation of authority to support it.

It is only necessary, therefore, for us to determine whether there is anything in the devise in question that clearly shows that it was the intention of the testator to use the words "child or children" in the sense of issue, and that the devisees over should not take until there had been a general failure of the issue of the deceased son. In the consideration of this question it must be borne in mind that the will in question must be construed with reference to the facts and conditions as they existed *at the date of the will, and not as subsequently developed.* It is immaterial, so far as the determination of the question before us is concerned, whether Leonard Caulk, the first son who died, left grandchildren, or any issue other than children.

It is contended by the counsel for the plaintiffs that not only

the words "child or children," but the subsequent words "survivors or survivor," indicate that the testator meant, or had in contemplation, not a general, but a definite failure of issue. It seems, however, very doubtful that such a position could be successfully maintained even if the words "their heirs and assigns forever" were not superadded to the words "survivors or survivor." The weight of authority appears to be against such a contention. It is true that in the somewhat noted case of *Anderson vs. Jackson, 16 John Com. Law Reps. (N. Y.) 382*, as well as in some other cases, it was held that the effect of the word "survivor" was to restrict the words "without lawful issue" to a failure of issue at the death. But it seems that the dissenting opinion of Chancellor Kent delivered in that case has been recognized by the courts of this State as laying down the sounder and better doctrine, wherein he says:

"The decision in *Anderson vs. Jackson* rested entirely upon the word 'survivor.' If that word will not support it, then it is an anomalous and unsound authority. The preceding words of the will in that case were those ordinary words creating an estate tail, as declared by all the authorities, ancient and modern, and without the instance of a single exception to the contrary, according to the remark of Lord Thurlow and of Lord Mansfield. The cases have already been referred to in which it has often been held that the word 'survivor' did not alter the settled construction of the words 'dying without issue'; and there is no case in which it has been construed to alter them, unless there was a material auxiliary circumstance, as in *Roe vs. Jeffrey*; or the word 'survivor' was coupled, not with issue, but with children, *in reference to personal property*."

In *Jarman on Wills* it is said "that even in bequests of personal property the presumption in favor of a limited construction of the words 'in default of issue' arising from the use of the word 'survivor' is repelled where *words of limitation are added to that word*. The addition excludes the presumption that it was a mere

personal benefit that was intended for the survivor; for, though there should be no such failure of issue as would enable him personally to take, yet his representatives would be entitled to claim in his right whensoever the failure of issue should happen." (See also cases cited by Jarman.)

In the case of *Hollet's Lessee vs. Pope and Quill,3 Harr.,542,*the Court said that in *Waples' Lessee vs. Harman, 1 Harr., 223, Anderson vs. Jackson* was cited because it contained the able and unanswerable argument of Chancellor Kent.

In the case of *Lessee of Dooling and wife vs. Hobb, 5 Harr., 505,* the Court held that a devise by the testator to his eight grandsons of all his lands to be equally divided between them, and if either of them should decease leaving no issue for it to descend to the surviving ones, created an estate tail. And in this case it will be noted that there were *no words of limitation superadded* to the words "surviving ones."

In the present case the limitation over is not only to the "survivors or survivor," but "to them or either of them, their heirs and assigns forever." By the use of such words of limitation the testator designed that a share or portion of a deceased son leaving no child or children, should go not only to the surviving sons, or even to them and their children, but to them, their heirs and assigns forever.

In these words, moreover, we think may be found the key which furnishes the solution of the problem we are to determine. Adopting the language used by the learned judge in the case of *Doe vs. Simpson (supra)*, "We consider this an interpretation by the testator himself of the word 'children,' as used by him in the previous part of the will."

It is unreasonable to suppose that Isaac Caulk, the testator, intended that his son, Leonard Caulk, should have but a life estate if he left no children living at his death, even though there might be grandchildren of Leonard then living, because he provides in the limitation over that such share should go not only to the *broth-*

*ers surviving and their children, but to their issue and descendants in the remotest degree.*  The testator could not possibly have intended to make any such distinction between the issue of his sons, and in fact he could not forsee which one would die first.  Neither could he know that the one who should first die might not leave grandchildren but no children.  A limited construction of the word " children " would, if the first son to die left no children living at his death, absolutely prevent grandchildren or any other issue remoter than children from taking any part of their father's share until there was a complete failure of the lineal descendants of the surviving brothers.

The case of *Bedford's Appeal, 40 Pa. St., 21,* so freely quoted from and so confidently relied upon by plaintiff's counsel, was a bequest of *personal property,* and therefore not at all applicable to the present case.  A somewhat different principle has been applied by the courts and a well defined distinction recognized in dealing with this species of property.  Justice Story, for example, in the case above mentioned, *Parkman vs. Bowdoin,* said: " The case of *Buffar vs. Bradford (2 Atk. R., 220)* was a case of *personal estate,* and turned upon that consideration ; for if the parent in that case was held to take an estate tail, under the bequest to her and the children born of her body, the parent would take *the whole to the exclusion of the children.*  And as the intent was clear, that the children should take, though there were no children born at the time of making the will, the Court construed the words to be words of *purchase* and not *words of limitation.*  In a devise of *real estate* there is no necessity to construe the words as words of purchase ; for the children may take under the estate tail.  It is well known that there are great distinctions in all this class of cases between bequests of personalty and devises of real estate.  This very case states it ; and it is recognized in many others " (citing some of them).  The case of *Stone vs. Maule, 2 Sim. 490,* was also one of a bequest of personal property.

Another case to which counsel for the plaintiff makes special

reference is that of *Brummet vs. Barber, 2 Hill, (S. Car.) 543.* Upon investigation this is also found to be a case dealing with a bequest of personal property. The Court said: "There is no doubt that the Court is not so strictly bound down to an artificial construction in personal as in real estate, and that in the former they will lay hold of words to tie up the generality of the expression of 'dying without issue', which would not have that effect in the case of real estate."

Another case to which he calls attention is *Booker vs. Booker, 5 Humph. (Tenn), 510,* which mainly concerned personal property. In that case the limitation over upon a dying without issue was to the *surviving children* of the testators. The Court very properly said that the words "surviving children" were very expressive of the testator's intention. The contingency was to happen within the life of some of the testator's children, and is therefore definitely restricted within the time the law allows.

In that case the Court also recognized the distinction existing between devises of real estate and bequests of personality that we have already mentioned, citing with approval the case of *Forth vs. Chapman,* ( *I. P. Williams, 663*), in which Lord Chancellor Macclesfield took a distinction between an executory devise of real estate and personal property; holding that in the former case the words "dying without issue" made an estate tail, because the words meant an indefinite failure of issue, but that with respect to personal property which was transient and perishable, the testator could not have intended a general failure of issue, and therefore, with regard to that species of property the testator must have meant, without issue at the time of the death of the first taker.

In the case of *Fosdick vs. Cornell, 1 John, 448,* so liberally quoted from by the plaintiff's counsel, the language was "that if any of my sons, or my daughter, shall happen to die *without heirs male of their own bodies,* that then the lands shall return to the survivors to be equally divided between them." Manifestly the decision in such a case can have no bearing upon the case before us. It is not at all in point.

The remaining case from which he quotes will also be founp to have no application to the question we are considering. It is the case of *Chrystie vs. Phyfe, 19 N. Y. P., 355,* in which the testator had devised land to his daughter " her heirs and assigns forever, but if my said daughter shall die unmarried and without leaving a child *her surviving,* then the real and personal estate as by this will were given to her, were devised to her two married sisters." The significant language in this . devise is " without leaving a child *her surviving";* and this is, perhaps, the most common illustration of the restriction of the failure of issue to the death. The very words used can convey no other meaning. This case cannot be considered to be at all analogous to the one before us.

The other cases cited by counsel for the plaintiff, but not particularly referred to or commented upon, are cases either involving bequests of personal property, cases in which the first devise was of a life estate, or in which the language indicative of the testator's intention was different from ours, and in which the limitation over was altogether different.

We do not find any case of a devise of *real estate,* where *the first devise* was in *fee simple* and the *limitation over* was to the *survivors in simple,* in which the courts have restricted the word " children" to a failure of issue at the time of the death of the first taker.

It is manifest from the entire will that Isaac Caulk intended to treat his three sons alike so far as the devise of his real estate was concerned, and not to deprive the issue of one son, remoter than children, at his death of the father's share and bestow it upon the surviving sons and their issue to the remotest degree. A precisely similar idea was in the mind of Lord Ellenborough when he said in the case of *Doe vs. Weber (supra)* " when the intent required it the word ' children ' had been held to include all descendants, mediate and immediate ; and the case then before him called for such a construction; *otherwise, in the event of H. dying without leaving any child surviving her, but leaving grandchildren, B., the*

*devisee over, would take in exclusion of such grandchildren, which would be contrary to the manifest intention of the testator."* And in that case, it will be noted, there were no particular words, such as are embraced in the limitation over in the case before us, which would negative any other conclusion than that the word " children " meant a general failure of issue.

It might be argued with much force that taking the whole will together, a fair construction would be to hold that each son took an absolute fee simple, and that any words therein which would seem to cut down the fee simple estate first given to a lesser estate, were inconsistent with the manifest intent of the testator as shown by the first devise and the language of the limitation over. Such a contention would be based on the fact that it clearly appeared from the whole instrument that the testator intended to treat his sons and their issue, however remote, with perfect equality, and the intention thus manifest should be carried out. But, as was said in *Parkman vs. Bowdoin,* the devise over being to collateral heirs of deceased son, the words " heirs and assigns " first used are necessarily cut down to an estate tail.

It is the opinion of the Court that James Wesley Caulk, Leonard Caulk and Alfred Caulk each took an estate tail in the lands devised to them in and by the will of their father, Isaac Caulk.